# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:22-cv-00104-MR

| | | |
|---|---|---|
| SHAWN O. RIDDLE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| TODD ISHEE, Secretary, | ) | |
| North Carolina Department of | ) | |
| Adult Correction, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on the Respondent's Motion for Summary Judgment. [Doc. 7].

## I. PROCEDURAL BACKGROUND

Shawn O. Riddle ("the Petitioner") is a prisoner of the State of North Carolina. This is a 28 U.S.C. § 2254 habeas corpus proceeding that stems from the Petitioner's conviction In Yancey County Superior Court on September 18, 2017. [Doc. 1 at 1]. The Petitioner was convicted of two counts of felony breaking or entering a building, six counts of felony breaking or entering a motor vehicle, two counts of felony larceny after breaking or entering a building, one count of felony possession of a stolen vehicle, one

count of felony larceny of goods valued in excess of $1000, and attaining habitual felon status.  State v. Riddle, 269 N.C. App. 110, 836 S.E.2d 344 (2019).

Following exhaustion of his state remedies, the Petitioner filed his § 2254 Petition for Writ of Habeas Corpus in this Court on May 23, 2022. [Doc. 1].  The Petitioner claims that he was provided ineffective assistance of counsel and that his Fifth Amendment right to due process was violated, as well as a violation of N.C. Gen. Stat. § 15A-1024.  [Id. at 5, 6, 8].  The Petitioner alleges that his attorney coerced him to plead guilty by showing him a letter from the district attorney that stated a sentence different from that he ultimately received, and therefore the plea agreement was not in keeping with his reasonable understanding.  [Id. at 5-6].

The Court entered an Order on January 1, 2023, directing the Respondent to respond to the § 2254 petition.  [Doc. 4].  The Respondent filed its Motion for Summary Judgment on March 14, 2023, moving this Court to grant summary judgment in its favor and deny the § 2254 petition.  [Doc. 7].  In support, the Respondent submitted a brief along with pleadings related to the Petitioner's original criminal case and the exhaustion of the Petitioner's state remedies.  [Doc. 8].

The Court issued an Order on April 3, 2023, advising the Petitioner of

the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court.  [Doc. 9]. The Petitioner filed a Response on April 24, 2023.  [Doc. 10].  To date, the Respondent has filed no reply.  The Respondent's Motion for Summary Judgment is now ripe for review.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56).  The burden then shifts to the nonmoving party to proffer competent evidence and specific facts showing that there is a genuine

issue for trial.  Id. at 323-24.  The nonmoving party must oppose a summary

judgment motion by going beyond the pleadings and by their own affidavits,

or by the "depositions, answers to interrogatories, and admissions on file,"

designate "specific facts showing that there is a genuine issue for trial."  Id.

(citing Fed. R. Civ. P. 56).  The nonmoving party "may not rest upon the mere

allegations or denials of his pleading" to defeat a motion for summary

judgment.  Id. at 322 n.3.

Any permissible inferences to be drawn from the underlying facts must

be viewed in the light most favorable to the party opposing the summary

judgment motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,

475 U.S. 574, 587-88 (1986).  Where, however, the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party,

disposition by summary judgment is appropriate.  Id. at 599.  A court is bound

to enter summary judgment "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."  Celotex,

477 U.S. at 322.

In reviewing the Respondent's Motion for Summary Judgment, the

Court must also consider the requirements governing petitions for habeas

corpus as set forth in the Antiterrorism and Effective Death Penalty Act

("AEDPA"), 28 U.S.C. § 2254(d).  The AEDPA applies to "a person in custody under a state-court judgment who seeks a determination that the custody violates the Constitution, laws, or treaties of the United States."  Rule 1(a)(1), 28 U.S.C. foll. § 2254.  Under the AEDPA, a state prisoner's claims are limited to allegations that challenge either the fact or duration of their confinement.  Preiser v. Rodriguez, 411 U.S. 475, 489 (1973).  "Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law."  Wilson v. Corcoran, 562 U.S. 1 (2011).

## III.    FACTUAL BACKGROUND

The forecast of evidence viewed in the light most favorable to the Petitioner is as follows:

The Petitioner was indicted on July 10, 2017, in Yancey County Superior Court and pled guilty pursuant to a plea agreement on September 18, 2017.  Riddle, 269 N.C. App. at 110, 836 S.E.2d at 244.  A letter to the Petitioner's defense attorney, B. Dean Grindstaff ("Grindstaff"), from the Assistant District Attorney ("ADA") dated August 10, 2017, details the plea offer made to the Petitioner, including the option that the Petitioner "could leave sentencing in the discretion of the Court, or the State would agree [to a sentence] at the bottom of the presumptive range for each sentence, and

5

the sentences would run *concurrently*, namely 103-136 months followed by 103-136 months." [Doc. 10-1 at 12] (emphasis added). However, at the plea hearing, the Petitioner chose to take his changes and leave sentencing to the discretion of the court. He was then sentenced to 125-162 months and 125-162 months to run *consecutively*. [Doc. 8-13 at 14-15; Doc. 1 at 1]. Four or five days after accepting his plea, the Petitioner wrote to the clerk of court indicating that he wanted to withdrawal his plea. [Doc. 8-14 at 17]. Because the Petitioner's notice of appeal was not filed timely with the correct trial court, he filed a petition for a writ of certiorari asking the North Carolina Court of Appeals to nonetheless review the merits of his appeal, which was granted. Riddle, 269 N.C. App. at 110, 836 S.E.2d at 244. The only issue on appeal was the trial court's restitution order, which was vacated in an opinion dated December 17, 2019. [Id.].

The Petitioner then filed a Motion for Appropriate Relief (MAR) on August 5, 2020. [Doc. 10-1]. The Petitioner testified at his MAR hearing that he understood the letter from the ADA to mean that he would be given a concurrent sentence if he accepted the plea. [Doc. 8-14 at 11]. He therefore notified his attorney that he would only sign the plea in court if the sentences would run concurrently, saying that "there's no way in hell I'm signing a plea for 17 years and four months." [Id. at 12-13]. The Petitioner testified that

6

Grindstaff assured him that he would not receive any more time than the 103-to-136-month sentence; Grindstaff denies that he ever made such a promise. [Id. at 14, 31]. Importantly, however, the Petitioner also testified that he signed the plea transcript that said, "sentencing is in the discretion of the Court," and represented the same to the judge at sentencing. [Doc. 8-14 at 22-23].

Based on this testimony and the accompanying record, Judge Horne denied the Petitioner's MAR on December 3, 2020, on the grounds that the Petitioner entered his pleas voluntarily and freely, was at all times represented by competent trial counsel, had made no showing of manifest injustice or other legal grounds for setting aside the judgment. [Doc. 10-1 at 23]. While Judge Horne found that the letter sent to Grindstaff from the ADA did include a clerical error, the Petitioner nonetheless decided with his attorney to leave sentencing to the discretion of the court, and that there was no promise or agreement that the Petitioner would receive a concurrent sentence. [Doc. 10-1: MAR Order at ¶ 8].

## IV. DISCUSSION

### A. Ineffective Assistance of Counsel

The right to counsel guaranteed by the Sixth Amendment includes the "right to the effective assistance of counsel." Strickland v. Washington, 466

U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).  To successfully challenge a conviction based on ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in Strickland, which requires the petitioner show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) counsel's deficient performance prejudiced the defense.  Strickland, 466 U.S. at 688, 692.

The first prong requires that petitioner show that counsel's performance was deficient by articulating specific acts or omissions that fell "outside the wide range of professionally competent assistance."  Id. at 690. The petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687).

To establish prejudice under the second prong, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  The petitioner must show that counsel's error worked to his "actual and substantial disadvantage," not merely that it created a "possibility of prejudice."  Satcher v. Pruett, 126 F.3d

561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

The court need not analyze both prongs if petitioner makes "an insufficient showing on one." Debreus v. United States, 2012 WL 3686250, *3 (D.S.C. Aug. 24, 2012) (citing Strickland, 466 U.S. at 697). Failure to satisfy either prong is fatal to a petitioner's claim. Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir. 1992).

A defendant who has pled guilty at the advice of counsel must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases," McMann v. Richardson, 397 U.S. 759, 771 (1970), and that, but for counsel's alleged error, there is a reasonable probability he would not have pled guilty and would have insisted on going to trial, see Hill v. Lockhart, 474 U.S. 52, 59 (1985). He must also "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 371-72 (2010).

"When assessing a Strickland claim through the lens of AEDPA, [the Court's] review is 'doubly deferential.'" Valentino v. Clarke, 972 F.3d 560, 580 (4th Cir. 2020) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)) (citations omitted). "The pivotal question [becomes] whether the

state court's application of the Strickland standard was unreasonable." Harrington, 562 U.S. at 101. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Id. In order to obtain habeas relief in federal court, the movant must show that "the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

In support of its motion for summary judgment, the Respondent argues that the record does not support the conclusion that the Petitioner would not have pled guilty and gone to trial absent the advice of his counsel. [Doc. 8 at 14]. The Respondent also argues that Judge Horne, who presided over the Petitioner's MAR, properly found that the Petitioner accepted his plea agreement knowingly and voluntarily and with the full understanding that his sentencing would be left to the discretion of the trial court. [Id. at 11-12].

The Petitioner's claim is foreclosed by his own sworn statements made under oath when entering his guilty plea. Statements made by a defendant under oath at a plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary

dismissal, as are contentions that in the face of the record are wholly incredible." Id. at 74. "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

At the time that he entered his guilty plea, the Petitioner swore under oath in open court that he could hear and understand the trial judge; that he was not under the influence of any intoxicating substances; that his attorney explained the charges to him and discussed them with him; that he understood the nature of the charges, including each element of each charge; and that he and his attorney had discussed possible defenses to the charges. [Doc. 8-13 at 6-8]. The Petitioner also affirmed that he was satisfied with his lawyer's legal services, and he was aware of the maximum possible sentences in deciding whether or not to accept the plea. [Id. at 7, 13].

The Petitioner acknowledged that he understood that if convicted after a trial by jury, his offenses carried combined maximum total sentence of 1,752 months imprisonment. [Id. at 13]. As such, the Petitioner was well aware that by leaving the sentence to the discretion of the court that he could receive a sentence longer (even much longer) than the concurrent sentence the ADA was willing to recommend, even though the Petitioner *hoped* for a

sentence shorter than that. He further affirmed that no one threatened him or made any other promises to cause him to plead guilty against his wishes. [Id. at 15].

The Petitioner now brings a self-serving allegation that counsel promised him he would receive a certain sentence. Such assertion, however, does not constitute the clear and convincing evidence that is necessary to refute his contrary representation that he made under oath during his plea colloquy. Moreover, the Petitioner's conclusory assertion that he felt pressured to accept the plea deal does nothing to undermine the voluntary and intelligent nature of his guilty plea. In sum, the Petitioner has not shown that his plea was entered unknowingly and involuntarily.

Finally, the Petitioner does not assert that, but for counsel's alleged deficient performance, there is a reasonable probability he would have rejected the plea deal and insisted on going to trial. See Hill, 474 U.S. at 59. Further, he has not alleged any facts to support an argument that rejection of the plea bargain would have been rational under the circumstances. See Padilla, 559 U.S. at 371-72. Notably, the Petitioner does not identify any possible defense he had to the charges against him. Moreover, had the Petitioner proceeded to trial and lost, he acknowledged that he could have received a sentence up to 146 years. For all these reasons, the Petitioner's

claim of ineffective assistance is without merit.

### B. Fifth Amendment Due Process

The Petitioner makes a similar claim that his Fifth Amendment right to due process was violated, arguing that "[d]ue process requires that the [plea] agreement be interpreted in keeping with a defendants [*sic*] reasonable understanding and that any ambiguity be construed against the state." [Doc. 1 at 6].

The Constitution requires that a defendant entering a guilty plea must do so knowingly, voluntarily, and intelligently. Brady v. United States, 397 U.S. 742, 748 (1970). A defendant enters a guilty plea intelligently when he is "advised by competent counsel, . . . made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties." Id. at 756. A guilty plea is voluntary if "entered by one fully aware of the direct consequences" of the plea. Id. at 755 (citation and quotation omitted).

As discussed above, the Petitioner presents no evidence that he did not accept his guilty plea freely and voluntarily. While the Petitioner relies heavily on the clerical error presented in the letter from the ADA in arguing otherwise, this error has no bearing on the Petitioner's plea. Most importantly, the Petitioner chose to leave sentencing at the discretion of the

court.  Therefore, the Petitioner's due process claim is without merit.

## C.    North Carolina General Statute § 15A-1024

The Petitioner also brings a claim under N.C. Gen. Stat § 15A-1024 on the grounds that he should have been allowed to withdraw his guilty plea. [Doc. 1 at 8].  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  Absent violation of a federal constitutional right, a habeas petitioner fails to state a cognizable claim for relief.  Wilson, 562 U.S. at 14.  Because Petitioner's claim presents only a question of state law, it is not cognizable on federal habeas review and must be dismissed.

## V.    CONCLUSION

For the reasons set forth above, the Court rejects the Petitioner's claims that his due process rights were violated in connection with his guilty plea.  The Petitioner fails to support his self-serving allegations with admissible evidence, and the forecast of evidence shows that his claims are wholly lacking in evidentiary support.  Accordingly, the Respondent's Motion for Summary Judgment will be granted and the § 2254 will be denied.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability.  See 28 U.S.C.

§ 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (noting that, in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that, when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1) The Respondent's Motion for Summary Judgment [Doc. 7] is **GRANTED**;

2) The Petition for Writ of Habeas Corpus [Doc. 1] is **DENIED**;

3) The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases; and

4) The Clerk is directed to terminate this case.

**IT IS SO ORDERED.**

Signed: February 26, 2024

Martin Reidinger
Chief United States District Judge